ELL DEE CLOTHING COMPANY, INC., Appellant, v. FREDERICK A. MARSH, Respondent.

Insurance (burglary) — contract — principal and agent — trial — duty of defendant to call attention to defect in proof that might easily have been supplied — sufficiency of description of goods covered by binder — provisions of policy in ordinary use by assurer imported into binder — in absence of regulation by State, burden upon assurer to show what conditions are implied — agent acting for unknown principal personally liable on contract — broker who signs binder as agent for "London Lloyds" personally liable until risk is assumed by underwriters.

1. Upon trial of an action to recover on a contract of burglary insurance, defendant should have called attention to the defect in proof, where plaintiff failed to show that defendant ever received the check for the premium, if he considered it important and intended to rely thereon.  The missing proof might have been supplied.

2. A binder issued upon an application for insurance against burglary, made by the receiver of a named store at a stated address, covers the personal property held by the receiver at that place and a contention that the goods covered by the binder are not described cannot be upheld.

3. A contention that there was a failure to prove a meeting of the minds of the parties and a contract for the reason that the binder

was intended to be superseded by a formal policy containing conditions and in its absence the nature of the risk assumed was not shown, cannot be sustained. A " binder " is a present contract of insurance issued to protect the assured temporarily while the assurer investigates the risk and determines whether or not to issue a permanent policy. Imported into it are all the obligations of the policy in ordinary use by the assurer. If the form of the policy is fixed by the State then its provisions are held to be included in any binder. In the absence of State regulations it is for the assurer to show that conditions are implied and what they are.

4. The defendant is personally liable on the binder where he signed it with knowledge by all that he was acting as agent for " London Lloyds," so that even he did not and could not know who were or were to be his principals, the custom being for a broker to post the particulars of the proposed risk, whereupon each underwriting member of the association subscribes his name and the share of the total he desires to assume, a policy being issued when the total amount is underwritten. An agent acting for an unknown principal is personally liable on the contract and the mere knowledge by the plaintiff or its predecessors of the facts, is not, as matter of law, sufficient to exonerate the defendant.

*Ell Dee Clothing Co.* v. *Marsh*, 220 App. Div. 701, reversed.

(Argued January 20, 1928; decided February 14, 1928.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 13, 1927, unanimously affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

*Leopold Blumberg* for appellant. The plaintiff established a cause of action. (*Lipman* v. *N. F. Ins. Co.*, 121 N. Y. 454; *Sherry* v. *National Surety Co. of N. Y.*, 243 N. Y. 266.) Defendant by signing individually the contract or binder of insurance without disclosing the name of any other principal is personally liable thereunder. (*Meyer* v. *Redmond*, 205 N. Y. 481; *Argersinger* v. *Macnaughton*, 114 N. Y. 538; *Cobb* v. *Knapp*, 71 N. Y. 348; *Held* v. *Kennelly*, 208 N. Y. Supp. 503; *Deremer* v. *Brown*, 165 N. Y. 410.) The objection that there is no

binding contract because defendant did not receive the premium cannot be sustained. (*Von Wein* v. *Scottish Union Ins. Co.*, 152 N. Y. Super. Ct. 490; *Van Wert* v. *St. Paul Fire Ins. Co.*, 8 App. Div. 109; *Washoe Tool Mfg. Co.* v. *Hibernia Fire Ins. Co.*, 66 N. Y. 613; *Church* v. *La Fayette Fire Ins. Co.*, 66 N. Y. 222.)

*Grant Hoerner* and *Henry Herzbrun* for respondent. The plaintiff failed to allege and prove a cause of action against this defendant for damages for a breach of contract of insurance. ·(*Lipman* v. *N. F. Ins. Co.*, 121 N. Y. 454; *Eames* v. *Home Ins. Co.*, 94 U. S. 621; *Cottingham* v. *Nat. Mut. Church Ins. Co.*, 290 Ill. 26; *Underwood* v. *Greenwich Ins. Co.*, 161 N. Y. 413; *Hicks* v. *British Am. Assur. Co.*, 162 N. Y. 284.)    The defendant by signing the " alleged binder " is not personally liable thereon.    The plaintiff and his witnesses testified to the effect that they knew Marsh was acting for London Lloyds. (*Argersinger* v. *Macnaughton*, 114 N. Y. 535; *Hernandez* v. *Brookdale Mills, Inc.*, 194 App. Div. 369.)

ANDREWS, J.  In November, 1923, the receiver of the plaintiff applied to his broker for a policy of burglary insurance to cover the stock of goods which had come into his possession.  In turn the broker passed on the application to another firm of brokers.  They endeavored to place the insurance and finally succeeded in making some arrangement with the defendant.

Mr. Marsh was the agent in New York of the " London Lloyds."  Precisely what were his powers is not clear. But when the application was handed to him it was understood by all parties that a " Lloyds " policy was to be received.

The application had been made out upon a form appropriate to marine insurance.  On the back were printed the clauses relating to that class of risk and immaterial here.  It was headed, " Underwriters and

Brokers Emergency Agreement," and the form was stated to be " Provisional." The application was said to be made by the brokers for the receiver of the Ell Dee clothing store. The amount of the insurance was to be $15,000. It was to protect against burglary for 60 days, " at and from 189 Stanton St., New York " (where in fact the goods were located), and then follows, " amount under deck $101.50." That sum was in fact the agreed premium for the policy. Then follow the words " Binding " and the signature " Marsh — for Company."

This paper was delivered to the receiver; he drew a check for $101.50, which was received by the negotiating brokers; on December 6 there was a burglary at 189 Stanton street, clothing in the receiver's hands being taken; shortly thereafter Marsh was notified of the burglary and about January 21 he received proofs of loss made out to " F. A. Marsh, Representing Lloyds."

No formal policy was ever executed by any one, and the plaintiff, having been vested with all the rights of the receiver in the subject-matter upon his discharge, brings this action to recover the loss directly of the defendant. It claims that he is personally liable upon the so-called " binder " executed by him.

Some preliminary matters must be considered before we reach the more important question involved in this case. It is said that the plaintiff has failed to show that Mr. Marsh ever received the check for the premium. It is true. But if the defendant considered it important and intended to rely on a missing bit of proof that might have been supplied, he should have called attention to the defect. No reference to it was made on the trial. It is said the goods supposed to be covered by the binder are not described. But the application is against burglary made by the receiver of the Ell Dee clothing store at 189 Stanton street. This would seem to cover the personal property, held by Mr. Derby as receiver of the corporation, at that place. It is said there is here no

complete contract.  The binder is intended to be super-seded by a formal policy.  Such a policy contains con-ditions to be performed by the assured.  In its absence the nature of the risk assumed is not shown.  So there is a failure to prove a meeting of the minds of the parties and a contract.  A " binder " is a present contract of insurance issued to protect the assured temporarily while the assurer investigates the risk and determines whether or not to issue a permanent policy.  Imported into it, however, are all the obligations " according to the terms of the policy in ordinary use by the company."  (*Sherri* v. *National Surety Co.*, 243 N. Y. 266.)  If the form of the policy is fixed by the State, then its provisions are held to be included in any binder.  If there is proof that the company has adopted any particular and customary form the same thing is true.  But it is for the company to show this fact.  In the absence of legislative direction it may use such a policy as it chooses.  It may adopt many or few conditions.  In the absence of all testimony there is no presumption that in its policy it has inserted any conditions precedent.  If it has adopted conditions subsequent it is for it to show that fact and that they have been broken by the assured.  There is no reason why it may not simply agree to indemnify for the loss by burglary of certain goods in return for a consideration.  So whether the binder is to be interpreted by itself or with the addition of implied conditions the minds of the parties meet.  And in the absence of State regulations it is for the assurer to show that conditions are implied and what they are.  Such seems to be intimated in *Under-wood* v. *Greenwich Ins. Co.* (161 N. Y. 413).  There may be an exception to this rule.  Some conditions may be so well understood as universally entering into insurance contracts, such as the necessity of notice and proofs of loss given to the insurer within a reasonable time, that the courts will imply them even though the binder be silent.  They must, however, be few.

1928.]          Opinion, per ANDREWS, J.          [247 N. Y. 392]

We come, therefore, to the substantial question which we must determine. The general rule may be stated that where one party to a written contract is known to the other to be in fact acting as agent for some known principal, he does not become personally liable whether he signs individually or as agent. (*Johnson* v. *Cate*, 77 Vt. 218.) On the other hand, although known to be acting for an unknown principal, he is personally liable. Knowledge of the real principal is the test, and this means actual knowledge, not suspicion. (*Cobb* v. *Knapp*, 71 N. Y. 348; *Argersinger* v. *Macnaughton*, 114 N. Y. 535; *McClure* v. *Central Trust Co.*, 165 N. Y. 108; *De Remer* v. *Brown*, 165 N. Y. 410; *Winsor* v. *Griggs*, 5 Cush. 210.) If this be a correct statement of the law, it determines the case before us.

London Lloyds is a voluntary association of merchants, shipowners, underwriters and brokers, originating in the seventeenth century and growing into a vast commercial organization. To it is due much of the law of marine insurance. In 1871 it was granted all the rights and privileges of a corporation. In its rooms an extensive insurance business is carried on. Lloyds itself, however, writes no policies. A broker for one wishing insurance posts the particulars of the proposed risk. Then each underwriting member of the association who wishes to do so subscribes his name and the share of the total desired that he wishes to take. When that total is reached the insurance is effected. A policy, in the form approved by Lloyds is then issued containing the names of the underwriters bound thereby and the name of their attorney in fact who handles the insurance affairs of the group. So who will become obligated on any policy is not and cannot be known until the underwriting is completed. And in each case only those who underwrite each particular policy are liable for any loss under that policy, and liable for the amount which they have underwritten. The insured contracts with each separately,

not with the group, jointly. (*Fish* v. *Vanderlip*, 218 N. Y. 29.)

Therefore, while the binder was signed by Marsh, with the knowledge by all that he was acting as agent, who were or were to be his principals, even he did not and could not then know. Under such circumstances the agent becomes personally liable on his contract. Not only were his supposed principals unknown to either Mr. Derby and his agents; in fact there were none. Some time in the future a group might be formed who would assume the risk. None existed when the binder was signed. And the mere knowledge by the plaintiff or its predecessors of all these facts is not, as a matter of law, sufficient to exonerate the defendant.

The judgments should be reversed and a new trial granted, with costs to abide the event.

CARDOZO, Ch. J., CRANE, LEHMAN, KELLOGG and O'BRIEN, JJ., concur; POUND, J., not sitting.

Judgments reversed, etc.